IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MILDEMONT, INC. d/b/a
BIG BRAKE of MS                                          PLAINTIFF

v.                                    CIVIL NO. 1:15-cv204-HSO-JCG

FORD MOTOR COMPANY                                       DEFENDANT

MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT FORD MOTOR COMPANY'S MOTIONS
FOR SUMMARY JUDGMENT [49] [51]

BEFORE THE COURT is Defendant Ford Motor Company's Motion for

Summary Judgment [49] filed July 1, 2016.  This Motion is fully briefed.  Also

before the Court is Defendant Ford Motor Company's Motion for Summary

Judgment as to Punitive Damages [51] filed July 1, 2016.  No responsive pleading

has been filed to this Motion.  Having considered the parties' submissions, the

record as a whole, and relevant legal authority, the Court is of the opinion that

Defendant's Motions [49] [51] should both be granted.

I.  BACKGROUND

A.    Relevant Background

This case arises out of a fire that occurred at Plaintiff Mildemont, Inc. d/b/a

Big Brake of MS's ("Plaintiff") place of business on May 5, 2012.  Compl. [1-2] at 1-2.

At the time of the fire, a 2001 Ford F-150 Super Crew four-door pickup truck owned

by Strickland Motors was parked in the garage of Plaintiff's business, Compl. [1-2]

at 1-2, for "unspecified repairs and maintenance," Pl. Mem. in Opp'n [55] at 5.  The

fire damaged Plaintiff's "building, business, and equipment."  Pl. Mem. in Opp'n [55] at 5.

B.    Procedural History

On May 4, 2015, Plaintiff filed a Complaint [1-2] in the Circuit Court of Harrison County, Mississippi, First Judicial District, advancing claims of negligence, product liability, and punitive damages against Defendant Ford Motor Company ("Defendant").  The Complaint alleges that the May 5, 2012, fire was caused by a "an electrical short or failure of the speed control deactivation switch" in the truck while it was parked in the garage of Plaintiff's business.  Compl. [1-2] at 1-2.  Plaintiff asserts that the fire spread from the truck to "the structure of the business" causing damage to the building's structure and equipment and a loss of business income.  *Id*.

Defendant removed the case to this Court on July 1, 2015.  Notice of Removal [1].  On July 1, 2016, Defendant filed its first Motion for Summary Judgment [49]. In this Motion, Defendant argues that Plaintiff's claim under the Mississippi Products Liability Act, Mississippi Code § 11-1-63 ("MPLA"), fails for a lack of expert testimony and based upon the fact that the F-150 was materially altered by a third party prior to the fire. Mem. in Supp. [50] at 1-12.  Defendant further asserts that Plaintiff's state common law claims are subsumed by the MPLA.  *Id*. at 2, 14-15.  Also on July 1, 2016, Defendant filed a second Motion for Summary on Plaintiff's Punitive Damages Claim [51], arguing that Plaintiff has failed to produce

any "clear and convincing" evidence that Defendant acted fraudulently or with gross negligence.  Mem. in Supp. [52] at 1.

 On July 29, 2016, Plaintiff filed its Response in Opposition [54] to Defendant's first Motion for Summary Judgment [49] maintaining that genuine issues of material fact exist concerning the following questions:

a. Whether the speed control deactivation switch in the subject vehicle constitutes a defective product?

b. Whether Ford designed the vehicle?

c. Whether the vehicle was designed in a defective manner?

d. Whether Ford Motor Company knew or should have known that the speed control deactivation switch was defectively designed at the time the subject vehicle left Ford's control?

e. Whether as a result of the defective condition, the vehicle failed to function as expected by an ordinary consumer with ordinary knowledge common to the community?

f. Whether a feasible design alternative existed which would have to a reasonable probability prevented the harm suffered by the Plaintiff without impairing the utility, usefulness, practicality, or desirability of the vehicle to users and consumers?

g. Whether a defective condition rendered the vehicle unreasonably dangerous to the user or consumer?

h. Whether the speed control deactivation switch was the actual and proximate cause of the fire responsible for damaging the Plaintiff's building, business, and equipment?

i. Whether Ford Motor Company's speed control deactivation switch through a course of conduct, and/or through resjudicata (sic), has admitted or been found to be defective?

j. Whether Ford Motor Company admitted and assumed liability for the fire responsible for damaging Mildemont's building, business, and

> equipment after entering into a settlement with Mildemont's insurer, Continental Casualty Company?
>
> k. Whether Ford Motor Company is liable for fire related damage to the building owned by Mildemont, including but not limited to the building's roof?
>
> f. (sic) Whether Ford Motor Company is liable for business interruption losses suffered by Mildemont as a result of the fire that occurred on May 5, 2012?

Resp. in Opp'n. [54] at 2-3.  Plaintiff contends that the present case is only "concerned with the issue of damages, not the issue of liability," because Defendant has "already admitted and accepted liability for the fire that damaged Plaintiff's building, business and equipment as a consequence of entering into a settlement agreement with Plaintiff's insurer."  Mem. in Opp'n [55] at 1-2.  Plaintiff has not responded to Defendant's second Motion for Summary Judgment as to Punitive Damages.

In Rebuttal [57], Defendant denies that it has confessed liability and further denies that any genuine issue of material fact exists.  Rebuttal [57] at 1-19.

## II.  DISCUSSION

A.  Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014); *see* Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, a court "view[s] the evidence and draw[s] reasonable inferences in the light most favorable to the nonmoving party."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir.

2015) (quoting *Cox*, 755 F.3d at 233); *Maddox v. Townsend & Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).  Before it can determine that there is no genuine issue for trial, a court must be satisfied that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990) (the nonmovant must set forth specific facts to contradict the specific facts set forth by the movant, general averments are not sufficient).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Royal v. CCC&R Tres Arboles, LLC*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).  An actual controversy exists "when both parties have submitted evidence of contradictory facts."  *Salazar-Limon v. Houston*, 826 F.3d 272, 277 (5th Cir. 2016) (quotation omitted).

B.    Plaintiff cannot create a triable issue of fact on its product liability claim against Defendant without expert testimony.

For Plaintiff to sustain its burden of proof and survive summary judgment on its product liability claim under the MPLA, which governs the resolution of this

diversity case, Plaintiff must show that the source of the fire in its garage was the defective speed control deactivation switch in the F-150, and

> that, (1) the [speed control deactivation switch] was defective at the time it left the control of the manufacturer or seller; (2) the defective condition rendered the product unreasonably dangerous to the consumer; and (3) the defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

*Smith v. Goodyear Tire & Rubber Co.*, 495 F.3d 224, 228 (5th Cir. 2007) (citing MISS. CODE ANN. § 11-1-63(a)).  Even if Plaintiff could show that the speed control deactivation switch was defective when it left Ford's control, Plaintiff must further establish that there had been no substantial change to the condition "in which the product left the manufacturer" in the eleven years since the F-150 at issue here left Ford's control.  *Id.* (quoting *BFGoodrich, Inc. v. Taylor,* 509 So. 2d 895, 903 (Miss. 1987)).

Plaintiff has designated no expert witness to testify as to any of these liability issues at trial.  In the absence of admissible expert testimony, it appears that Plaintiff cannot rebut Defendant's Motion for Summary Judgment with sufficient evidence to prove, or otherwise create an issue of fact, on whether the fire was proximately caused by a defective speed control deactivation switch in the F-150.

Although the MPLA does not require expert testimony in all cases, the Court finds that given the nature of these claims and particular facts of this case, the arguments of counsel standing alone, and without explanation or support from an expert, are insufficient to carry Plaintiff's summary judgment burden of

demonstrating that the speed control deactivation switch in this case was in fact defective and that, if defective, this condition was the proximate cause of the fire which damaged Plaintiff's premises.  The Court finds that the nature of Plaintiff's claim against Defendant, implicates scientific, technical, or other specialized knowledge within the meaning of Federal Rule of Evidence 702, and that no reasonable trier of fact could find for Plaintiff on its product liability claim in the absence of such expert testimony.  In opposing summary judgment, Plaintiff has pointed to no such evidence.  This is insufficient to sustain Plaintiff's burden.

C.    Plaintiff's argument that liability was admitted is unfounded.

Plaintiff posits that expert testimony is not needed to prove its product liability claim because Defendant has admitted that the speed control deactivation switch was defective and that it caused the fire by way of its Answer at ¶¶ 30-32, 45-46, 71-72, its Response to Request for Admission No. 13, its recall notices, its settlement with Plaintiff's insurer Continental Casualty Company, and the testimony of Defendant's own expert.  Mem. in Opp'n [55] at 1-3.  Plaintiff contends that, based upon these admissions and by entering into a settlement with Plaintiff's insurer, "a reasonable juror" could find that Defendant admitted the fire was caused by the speed control deactivation switch even though a material alteration had been made to the truck.  *Id*. at 7-20.

After careful analysis of the record, it appears to the Court that the Defendant has denied liability.  The paragraphs in Defendant's Answer proffered by Plaintiff as purported admissions state as follows:

30. Ford admits the 2001 F-150 contained a speed control deactivation switch which was designed and manufactured by Texas Instruments. Ford also admits that, *in certain of these vehicles and over time, a process may occur which can cause the switch to overheat, smoke or burn*. Ford denies the remaining averments contained in Paragraph 30.

31. Ford admits the 2001 F-150 contained a speed control deactivation switch which was designed and manufactured by Texas Instruments. Ford also admits that, *in certain of these vehicles and over time, a process may occur which can cause the switch to overheat, smoke or burn*. This process requires a leak path to develop which allows brake fluid to contact the electrical contacts in the switch. Ford denies the remaining averments contained in Paragraph 31.

32. Ford admits the 2001 F-150 contained a speed control deactivation switch which was designed and manufactured by Texas Instruments. Ford also admits that, *in certain of these vehicles and over time, a process may occur which can cause the switch to overheat, smoke or burn*. This process requires a leak path to develop which allows brake fluid to contact the electrical contacts in the switch and, over time, the corrosion of the switch contacts and the development of a resistive short to ground that generates heat in the switch cavity, which can result in the melting of the plastic base. In some cases, the switch can overheat, smoke or burn. *Ford denies all allegations contained in Paragraph 32 to the extent they imply that the speed control deactivation switch in the vehicle that is the subject of this lawsuit had corroded switch contacts and developed a resistive short that generated heat in the switch cavity that resulted in melting the plastic base and causing a fire.*

.   .   .

45. Ford admits in some instances, depending on factors which include the orientation of the speed control deactivation switch and the proximity of other combustive material, flames can propagate to the area surrounding the speed control deactivation switch. *Ford denies all allegations contained in Paragraph 45 to the extent they imply that the alleged condition actually existed or the alleged process actually occurred in the vehicle that is the subject of this lawsuit.*

46. Ford admits that if a leak path develops in the multi-layer diaphragm and gasket seal between the hydraulic and electrical portions of the speed control deactivation switch in those vehicles under recall, and if brake fluid and other contaminants leak through, then components in the electrical portion of the switch may corrode. *Ford denies all allegations in Paragraph 46 to the extent they imply that the*

8

*alleged condition actually existed or the alleged process actually occurred in the vehicle that is the subject of this lawsuit. Ford also objects to the Plaintiff's reference to West, and states that Answers in other cases have no bearing on this proceeding.*

.   .   .

71. Ford admits only that it issued Recall 99S15 in May 1999. That Recall speaks for itself. *Ford denies any allegations in Paragraph 71, including but not limited to any suggestion of knowledge that a defect or defective condition existed in the subject vehicle at the time the vehicle left the possession of Ford.*

72. Ford admits only that it issued Recall 05S28 in January 2005. That Recall speaks for itself. *Ford denies any other allegations in Paragraph 72, including but not limited to any suggestion of knowledge that a defect or defective condition existed in the subject vehicle at the time the vehicle left the possession of Ford.*

Answer [5] (emphasis added).  The Court finds that the foregoing excerpts do not

support a conclusion that Defendant has admitted liability in this matter through

its Answer to the Complaint.

Plaintiff next argues that Defendant's response to Request for Admission 13

constitutes a binding admission of liability.  The record contains only Plaintiff's

Requests for Admission 1-11, not 13, and Defendant's responses to Requests for

Admission 1-10.  Defendant did not admit liability in any of its ten responses. *See*

Exhibit 3 [54-3] at 7-13.

Next, pursuant to Federal Rule of Evidence 407, the Court finds that the

recall notices constitute "subsequent remedial measures" and cannot be construed

to be an admission of liability in this particular case.  *See Rutledge v. Harley-*

*Davidson Motor Co.,* 364 F. App'x 103, 104-06 (5th Cir. 2010).  Even if the Court

were to assume "arguendo, the recall notices [do] constitute admissible evidence,

9

they themselves do not demonstrate the product in question was defective." *Cothern v. Baxter Healthcare Corp.*, 798 F. Supp. 2d 779, 783 (S.D. Miss. 2011).  The MPLA mandates that Plaintiff prove that the F-150's speed control deactivation switch at issue in this case was itself defective, that it had not been materially altered after it left Ford's control, and that it "proximately" caused the fire.  *Smith*, 495 F.3d at 228; *Cothern*, 798 F. Supp. 2d at 783; *Rutledge,* 364 F. App'x at 108.

Plaintiff can likewise find no support for its position in the contention that Defendant has admitted liability for the fire in the Release and Confidential Settlement Agreement [54-8] between Defendant and Continental Casualty Insurance Company.  By its very terms the Agreement states that "[b]ona fide disputes and controversies exist," and that the

> Agreement is a compromise of doubtful and disputed claims and the payment is not to be construed as an admission of liability by any party released herein.  Ford expressly denies any liability regarding the incident and/or the Ford Vehicle.

Exhibit 8 [54-8] at 1-2.  The record does not support a finding that Defendant admitted liability by entering into the Settlement Agreement, especially where it specifically denied liability.  *See also Latiolais v. Cravins*, 574 F. App'x 429, 434-36 (5th Cir. 2014) (holding that settlement agreements are not admissible to "prove or disprove the validity of a disputed claim" pursuant to Federal Rule of Evidence 408).

Finally, Plaintiff's reliance on the deposition testimony of Defendant's expert Mark Hoffman ("Hoffman") as an admission of liability is misplaced.  Hoffman testified that "[t]here's insufficient information to show us whether the switch failed

at all, let alone whether it could have been the ignition source of this fire." Hoffman

Depo. [54-7] at 13.

After careful analysis of record, it appears to the Court that Defendant has

consistently denied liability. Although Plaintiff has presented its theory of the case

in both its Complaint and its Response [54], and has further asserted in its

Response that there are genuine issues of material fact, Resp. in Opp'n. [54] at 2-3,

Plaintiff has not pointed the Court to any competent summary judgment evidence

showing the existence of a material fact question for trial or otherwise rebutting

Defendant's Motion for Summary Judgment. As set forth in *Celetox Corp. v.*

*Catrett*, 477 U.S. 317 (1986), "[p]leadings are not summary judgment evidence."

*Yumilicious Franchise, LLC, v. Barrie*, 819 F.3d 170, 178 (5th Cir. 2016) (quoting

*Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)).

Having considered the parties' submissions, the record, and relevant legal

authority, the Court is of the opinion that Defendant is entitled to judgment as a

matter of law on Plaintiff's MPLA claims.

D.     Plaintiff's negligence claims are subsumed by the MPLA.

To the extent Plaintiff raises common law negligence claims, they are

subsumed by and subject to the requirements of the MPLA. *Dykes v. Husqvarna*

*Outdoor Products, N.A., Inc.*, 869 F. Supp. 2d 749, 760 (S.D. Miss. 2012) (citing

*McSwain v Sunrise Med., Inc.*, 689 F. Supp. 2d 835 (S.D. Miss. 2010)).

Since the Court has found that Plaintiff cannot withstand summary

judgment on its MPLA claim, "neither can [it] prove [its] redundant negligence

claims." *Id.*  Therefore, Defendant should be granted summary judgment as to any negligence claims asserted by Plaintiff.

E.    <u>Since Plaintiff is not entitled to any compensatory damages, Plaintiff is not entitled to punitive damages.</u>

Under Mississippi law, a claim for punitive damages may only be addressed after an award of compensatory damages pursuant to Mississippi Code § 11-1-65(c), which states that "[i]f, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing to determine whether punitive damages may be considered by the same trier of fact." MISS. CODE ANN. § 11-1-65(c).

Defendant is entitled to summary judgment on Plaintiff's punitive damages claim because Plaintiff is not entitled to go forward with any of its claims for compensatory damages.  *See Dykes*, 869 F. Supp. 2d at 760-61.  Defendant's Motion for Summary Judgment on Plaintiff's Punitive Damages Claim should also be granted.

## III.  <u>CONCLUSION</u>

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.  The Court will grant Defendant Ford Motor Company's Motions for Summary Judgment [49] [51], and Plaintiff's claims against Defendant will be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that Defendant Ford Motor Company's Motion for Summary Judgment [49] is **GRANTED** and its Motion for Summary Judgment on Plaintiff's Punitive Damages Claim is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Plaintiff Mildemont, Inc. d/b/a Big Brake of MS's claims against Defendant Ford Motor Company are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this the 13th day of January, 2017.

_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

13